# QUARTER SESSIONS OF LACKAWANNA CO.

## COMMONWEALTH vs. VAN GORDER.

Van Gorder was sentenced to pay costs and stand committed until the sentence be complied with. After more than thirty days imprisonment, application was made for his discharge, he being without property and unable to pay the costs  HELD,

When the statute directs the prisoner to be discharged according to law, after having been in confinement for the period of thirty days, although the sentence is only to pay the costs of prosecution the prisoner is entitled to his discharge upon complying with the requirements of the insolvent debtor's act, after having remained in confinement under such sentence for the period of thirty days.

Opinion by HANDLEY, P. J.

*In re Application on the part of the County Commissioners for the discharge of Cyprian Van Gorder.*

The petition of the Commissioners, shows, that the prisoner has been confined since the 6th day of March, 1879, and that they believe that he is without property and unable to pay the costs amounting to some eighty dollars.   It is contended by the counsel for the prisoner that because he is now in jail more than thirty days he ought to be discharged according to law.   The Court of Common Pleas of any county, in which any person may be confined by sentence     *     *     *      for the non-payment of the costs of prosecution     *     *     *· shall have power to discharge such person from such confinement, on his making application and conforming to the provisions hereinbefore directed, in the case of insolvent debtors; 1 Purd. Dig. 781, § 56.

The proviso to this section omits the condition that such person must have been in prison for a period not less than three months, except those convicted of the crime of fornication and bastardy, and when the prisoner shall have been sentenced to the payment of a fine.   And yet notwithstanding the proviso of this statute omits to name a prisoner sentenced for the payment of the costs of prosecution, it has been held, in the case of In Re John Woods, 1 Pitts. Rep., 17, where an applicant for discharge who was

in prison under sentence to pay costs, that he could not make application for his discharge until he shall have remained in prison for three months. This case is not, however, well considered. The syllabus shows that the prisoner was in for the non-payment of a "fine," whilst the statement of the case shows that Woods preferred a bill of indictment against the School Directors of Ross township, for forcible entry and detainer. The verdict was not guilty and that John Woods, the prosecutor pay the costs. He is in prison, adds the Judge, under sentence of the court to pay "costs."

To say that there is a vast difference in the administration of criminal justice, between a "fine" and "costs" seems hardly necessary. But nevertheless there is a difference, and it requires no citation to sustain this conclusion. The closing sentence, however, of the opinion in the Woods case indicates why it was thus disposed of. The court says: "This prisoner is no object of compassion; he, with a strong arm took possession of a public or a common school, armed, garrisoned and provisioned, his provisions were chiefly whisky."

To say the least, these were terrible words for a Judge sitting on the bench to let fall. The most humble, as well as the most sinful, of God's creatures, whether in or out of prison, are objects of compassion. To say, while one is carrying the cross in this world that he "is no object of compassion," is against every principle of humanity. The true rule controlling this question is well stated in Brightly on Costs at page 338. It is there laid down that under the 48th section of the act of the 16th of June, 1836, a defendant sentenced to pay a fine not exceeding fifteen dollars and the costs, is entitled to a discharge from imprisonment both as to fine and costs, after having remained in confinement for the space of thirty days for the fine. In the case of ex parte Fox, Brightly on Costs 339, it was held that a prisoner in jail for thirty days, could not be discharged for costs alone, under the 18th section of the act of 1814, similar to the 47th section of the act of 1836. But subsequently the prisoner was discharged

under the 17th section, which is similar to the 48th section of the act of 1836.

Why should a prisoner, sentenced to pay the costs of prosecution, who is unable to do so, and is without property, be detained in prison, at the expense of the tax payers, for the period of ninety days? If law is founded on reason, and the administration of justice is to be exercised with economy, then every principle that is sound, demands that the prisoner be discharged as the law directs at the end of thirty days when the sentence is only for costs. After this opinion was written Judge Hand called my attention to the acts of 1789 and 1791.

It is provided by the act of the 27th of March, 1789, "that every person who now is, or hereafter shall be confined in any jail within this Commonwealth  *  *  * for any debt or debts  *  *  *  or fine. forfeiture or forfeitures none of which do or shall exceed the sum of five pounds, exclusive of costs, and he shall have remained so confined for the space of thirty days, shall be discharged from such confinement, and not be liable to be again imprisoned for the same." 3 Laws of Penn., 342. This act failed to provide for the discharge of a prisoner sentenced to pay costs, after thirty days confinement. But the law making power, to remedy this defect, on the 23d day of September, 1791, passed an act, the 12th section of which provided that, any person or persons who is, are, or shall be held in confinement by order or judgment of any Court of this Commonwealth for the costs of prosecution, shall be entitled to the benefit of the several acts of Assembly of this Commonwealth for the relief of insolvent debtors, and may be discharged from personal imprisonment by the Court in which such prosecution was or may be had: 4 Laws of Penn., 80.

By the 79th section of the act of 1860, P. L. 457, it is provided that certain acts of Assembly and parts thereof, and all other parts of the criminal laws of this State, *  *  *  so far as the same are altered and supplied by an act to consolidate, revise and amend the penal laws of the Commonwealth  *  *  *  be and

the same are hereby repealed.   Now, the 12th section of the act of the 23d of September, 1791, is expressly saved from this repealing statute, P. L., 1860, 452.

We must, therefore, hold that where the statute directs the prisoner to be discharged according to law, after having been in confinement for the period of thirty days, although such sentence is only to pay the costs of prosecution, the prisoner is entitled to his discharge upon complying with the requirements of the insolvent debtor's act, after having remained in confinement under such sentence for the period of thirty days.

Amerman for Commissioners.

Smith for prisoner.

---

After all these tragic events we turn with a sense of relief to one that may be ranked as a comedy, if not a farce. The Vanderbilt will contest, the most important ever waged in this country, has resulted in the upholding of the will. It is easy to glean two lessons from this celebrated cause. First, what a vulgar talent is that which simply fits a man to accumulate wealth. Dean Swift said one could see what estimate the Lord put on riches by observing what a class of men he allowed to obtain them. Making all due allowance in this case for testimony that does not commend itself to belief, and availing ourselves of the public knowledge of the testator, it is noticeable that the greatest fortune ever accumulated in America was acquired by a character and by means such as should render professional men content to be poor. In the second place, we observe the dangerous power committed to one man's hands by the possession of such wealth. It is in hostility to the ideas of our government to entail property, and even the temporary possession of such a fortune in one family is a social, political, and moral misfortune. It is our sincere conviction that the portion of the Vanderbilt estate which is most usefully bestowed is that which goes to the lawyers.—The surrogate in his decision

reads a severe lecture to parties, counsel and witnesses. We cannot say that it is undeserved, but we have noticed that courts sometimes are more zealous in the vindication of the Rich Man than of Lazarus. —*Albany Law Journal.*

## NOTES OF RECENT DECISIONS IN SUPREME COURT, PA.

Although a child is not chargeable with contributory negligence, persons having business in the streets may act upon the belief that an infant will not voluntarily thrust himself under the feet of horses or the wheels of a carriage, and therefore drivers and others are not bound to provide against possible damages resulting to an infant from his own wilful negligence. The failure to provide against such an accident is not negligence.

A boy, six years old, in attempting to jump on the front platform of a horse car, was run over and injured; the car ran through a thinly populated suburb, was drawn by one horse, and under the care of one man, who performed the duty of both driver and conductor.

*Held*, that the failure of the defendants to place fenders on the front platform of the car, and the fact that the driver had gone to the rear of the car in the course of his duty, did not entitle the plaintiff to have the question of the defendant's negligence submitted to the jury—*Hesterville R. R. Co. vs. Connell.*

When there is a reasonable doubt as to the facts or as to the inferences to be drawn from them, or when the measure of duty is ordinary and reasonable care, and the degree of care varies according to the circumstances, the question of contributory negligence is necessarily for the jury.

A. took passage on the P. & T. R. R. for "Penn Valley," a station on that road. After passing the station immediately preceding his destination, the conductor of the train announced that the next station would be "Penn Valley." As the train slowed up, A. moved to the front platform of the car, which stopped opposite a platform and depot marked "Penn Valley." It was necessary to cross the track to reach this platform, which was on the left hand side. A. stepped off the car platform and was struck by a passing express train of the company defendant and instantly killed. The evidence showed that the train had stopped in obedience to a rule of the company that trains should not pass each other at stations, that "local passenger trains will give preference to through express trains," and that the proper landing place for passengers by the local train was some eighty feet beyond this point, and on the right.

*Held*, that the question of contributory negligence was properly submitted to the jury.

PER STERRET, J. The rule of law that persons about to cross a railroad track must stop, look, and listen, and that the failure to do so is negligence *per se*, "is not always applicable to passengers leaving a train and crossing the track to reach the depot at the point of destination."— *Pa. R. R. Co. vs. White.*

---

Where the plaintiff's evidence did not clearly show contributory negligence, the defendants gave evidence (not contradicted) which they claimed clearly showed contributory negligence, and presented points based thereon requesting the Court to charge, as matter of law, that the plaintiffs could not recover. The Court declined so to charge, but submitted the question of contributory negligence to the jury, and affirmed the points, "provided the jury find the facts as assumed."

*Held*, that in this there was no error, but, on the contrary, if the Court below had affirmed the points without qualification, it would have been an invasion of the province of the jury.— *Pa. R. R. Co. vs. Werner.*